IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN H. CRICHTON, JR., on behalf of himself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) CIVIL NO. 06-264-GPM<br>) |
| GOLDEN RULE INSURANCE COMPANY, | )<br>) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

This matter is before the Court on the motion to dismiss brought by Defendant Golden Rule Insurance Company ("Golden Rule") (Doc. 20). For the following reasons, the motion is **GRANTED**. Count I of the operative complaint in this case (Doc. 7) is **DISMISSED with prejudice**. Count II and Count III are **DISMISSED without prejudice**. Plaintiff John H. Crichton, Jr., is given leave to file an amended complaint in conformity with this Order not later than thirty (30) days from the date of entry of this Order.

## INTRODUCTION

Crichton alleges that in 1995 he joined the Federation of American Consumers and Travelers ("FACT"), a non-profit consumer organization that provides to its members, among other services, access to health insurance products underwritten by Golden Rule. *See* Doc. 7 ¶ 3, ¶ 10. As a FACT member, Crichton purchased a certificate of insurance under a master association group health insurance policy issued to FACT by Golden Rule. *See id*. ¶ 10. Crichton maintained health insurance under the policy until 2004. *See id*. Crichton alleges that Golden Rule induced him to

purchase the insurance by offering it at an artificially low initial premium, then substantially increasing the premium when the policy was renewed. *See id.* ¶ 5, ¶¶ 35-36. Crichton alleges further that the insurer substantially increased his premiums through a deliberate policy of grouping certificate holders in "blocks," then "closing" the blocks, that is, discontinuing the marketing to and enrollment of otherwise eligible individuals in an existing pool of association group health insurance. *See id.* ¶ 5, ¶¶ 29-32. Golden Rule's practice of closing blocks of insurance has the effect, Crichton alleges, of forcing premiums up for existing insureds in the insurance pool and forcing out of the pool insureds who cannot afford to pay the rising premiums. *See id.* ¶ 31.

Crichton's complaint, which is brought on behalf of a proposed nationwide class of persons who hold or have held certificates of insurance under master group insurance policies issued to FACT by Golden Rule since 1990, asserts three counts in connection with Golden Rule's marketing and sales practices. Count I alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 – 505/12 ("ICFA").[1] Count II asserts a claim for common-law fraud. Finally, Count III alleges violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"). Jurisdiction is asserted on the basis of 28 U.S.C. § 1331 and 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). Golden Rule has moved for

---

1. Count I of Crichton's complaint invokes on behalf of the proposed class in this case the consumer fraud statutes of forty-seven other states and the District of Columbia. At this time only Crichton's claim under the ICFA is before the Court. The question of the applicability of the laws of other states to this case is one that will not be before the Court until such time as Crichton requests certification of the proposed nationwide class. *See Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018-19 (7th Cir. 2002); *Isaacs v. Sprint Corp.*, 261 F.3d 679, 682 (7th Cir. 2001); *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1299-1302 (7th Cir. 1995).

dismissal of Crichton's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Having reviewed the submissions of the parties and conducted a hearing on the motion, the Court now is prepared to rule.

## DISCUSSION

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the legal sufficiency of a plaintiff's complaint to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6); *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996). "The essence of a defendant's Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts, it is that even assuming all of his facts are accurate, he has no legal claim." *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999) (citing *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1059 (7th Cir. 1999)). In evaluating a Rule 12(b)(6) motion, a court must take a plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002); *Strasburger v. Board of Educ., Hardin County Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 359 (7th Cir. 1998). A complaint should be dismissed for failure to state a claim for relief only if "no relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). *See also Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999).

### B. Golden Rule's Motion to Dismiss

#### 1. Count I (the ICFA)

Golden Rule seeks dismissal of Count I of Crichton's complaint on the grounds that

Crichton, a Florida resident, lacks standing to sue under the ICFA, and on the grounds that Crichton's allegations of consumer fraud are not pleaded with particularity. The Court agrees with Golden Rule that Crichton lacks standing under the ICFA. In *Avery v. State Farm Mutual Automobile Insurance Co.*, 835 N.E.2d 801 (Ill. 2005), the court decertified a nationwide class action against an Illinois-based automobile insurer under the ICFA, holding that the members of the class who were not Illinois residents lacked standing to sue under the statute. *See id*. at 849-55. The *Avery* court held that an out-of-state resident may have a private right of action under the ICFA, but the statute does not apply to "fraudulent transactions which take place outside Illinois." *Id*. at 853. Conversely, the court held, "a plaintiff may pursue a private cause of action under the [ICFA] if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Id*. at 853-54. In determining whether the claims under the ICFA brought by the out-of-state class representatives in *Avery* had the requisite nexus with Illinois, the court examined the place of residence of those plaintiffs, where the misrepresentations at issue in the case were made, where the damage to the plaintiffs occurred, and whether the plaintiffs communicated with the insurer or its agents in Illinois. *See id*. at 854-55. Importantly, the court rejected the notion that an allegation that a defendant was headquartered in Illinois or that its deceptive practices flowed from Illinois was sufficient to assert a claim. The court held, "The appellate court's conclusion that a scheme to defraud was 'disseminated' from State Farm's headquarters [in Illinois] is insufficient" to establish standing under the ICFA. *Id*. at 855. "[W]here the only connection with Illinois is the headquarters of the defendant or the fact that a scheme 'emanated' from Illinois, the [ICFA] 'does not apply to the claims of the non-Illinois plaintiffs[.]'" *Id*. (quoting *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 340 & n.10 (N.D. Ill. 1997)).

In this case, Crichton's complaint alleges that Golden Rule maintains its principal place of business in Indiana but has a "'home' office" in Illinois. Doc. 7 ¶ 11. Also, to the extent it is relevant, Crichton alleges that FACT is headquartered in Illinois. *See id.* ¶ 3. It can also be inferred from the allegations of the complaint that Golden Rule does a certain amount of customer relations work at its Illinois office. *See id.* ¶ 55, ¶ 57. Importantly, the complaint does not allege that Crichton bought insurance in Illinois, paid premiums in Illinois, or engaged in any communications with Golden Rule in Illinois, and it is obvious that the gist of his allegations is simply that the allegedly fraudulent scheme at issue here emanated from Golden Rule's office in Illinois, which, as discussed, is not sufficient to establish standing under the ICFA. *See In re Sears, Roebuck & Co.*, No. MDL-1703, 05 C 4742, 05 C 2623, 2006 WL 1443737, at *2 (N.D. Ill. May 17, 2006) (holding that out-of-state plaintiffs lacked standing under the ICFA where no such plaintiff "alleges that he or she bought tools from any of Sears's stores in Illinois" or that "he or she saw, heard, or otherwise was exposed to any misrepresentation in Illinois" and "no plaintiff alleges any contact with a Sears agent in Illinois."); *Shaw v. Hyatt Int'l Corp.*, No. 05 C 5022, 2005 WL 3088438, at *2 (N.D. Ill. Nov. 15, 2005) (in a putative class action arising from an Illinois-based hotel chain's allegedly fraudulent currency exchange inflation scheme, holding that the named plaintiff lacked standing under the ICFA: "Plaintiff, a London resident (and former New York resident), reserved a hotel room in Russia through Hyatt's website, and was charged more than originally quoted on the website due to the hotel's inflated currency exchange rates. These allegations do not establish the requisite nexus with Illinois, and thus, there is no basis for the application of the ICFA to the transaction at issue.").

To the extent Crichton argues that he has standing to sue Golden Rule under Florida

consumer protection laws, Crichton's complaint asserts a claim under the ICFA, not Florida law. The matter of whether members of the class Crichton seeks to represent have standing under Florida law is irrelevant to the issue of Crichton's standing under either Illinois law or Florida law, *see Payton v. County of Kane*, 308 F.3d 673, 680-81 (7th Cir. 2002); *Walters v. Edgar*, 163 F.3d 430, 432-33 (7th Cir. 1998); *Hope, Inc. v. DuPage County, Ill.*, 738 F.2d 797, 804-05 (7th Cir. 1984), and, in any event, Florida's consumer fraud statute does not apply to Golden Rule, as an entity regulated by that state's insurance authorities. *See* Fla. Stat. Ann. § 501.212(4)(a), (d); *W.S. Badcock Corp. v. Myers*, 696 So. 2d 776, 781-82 (Fla. Dist. Ct. App. 1996). The Court concludes that Crichton's ICFA claim is due to be dismissed.[2]

### 2. Count II (Common-Law Fraud)

Golden Rule seeks dismissal of Crichton's claim for common-law fraud on the grounds that it is not pleaded with adequate particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. The Court agrees. Rule 9(b) provides of course that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent knowledge, and other condition of mind of a person may be averred generally." FED. R. CIV. P. 9(b). Under Rule 9(b), a plaintiff must set out in a complaint with respect to any allegedly fraudulent misrepresentation the "who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). *See also Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). The purpose of

---

2. Because the Court concludes that Crichton lacks standing to sue under the ICFA, the Court need not decide Golden Rule's alternative basis for dismissal of Crichton's ICFA claim, namely, that it is not pleaded with adequate particularity, although for the reasons discussed infra it is clear that Crichton's allegations of consumer fraud do not satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

Rule 9(b), in regard to fraud claims, "is to minimize the extortionate impact that a baseless claim of fraud can have on a firm or an individual" because, if a fraud claim is too vague during discovery, the claim "will stand unrefuted, placing what may be undue pressure on the defendant to settle the case in order to lift the cloud on its reputation." *Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 748-49 (7th Cir. 2005). Rule 9(b) requires a plaintiff to provide sufficient specificity to allow a defendant accused of fraud to respond "swiftly and effectively if the claim is groundless." *Id.*

Rule 9(b) "requires the plaintiff to state . . . the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). None of this critical information appears in Crichton's complaint, which is devoid of specific dates, times, places, names, and the contents of particular statements alleged to be fraudulent. There is an exception to the pleading requirements of Rule 9(b), of course, for situations where the information required in order to plead with particularity is solely in the possession of a defendant. *See Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998); *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992). In this case, however, Crichton does not allege that the information he needs in order to plead up to the requirements of Rule 9(b) is solely in the possession of Golden Rule, and, given that Crichton's claims of fraud rest on alleged misrepresentations and omissions in documents that he received from the insurer, it is obvious that it is not. Thus, the exception does not apply. The Court concludes that Count II of Crichton's complaint is due to be dismissed.

In general, dismissal for failure to plead with particularity under Rule 9(b) should be without

prejudice and with leave to re-plead. *See Pressalite Corp. v. Matsushita Elec. Corp. of Am.*, No. 02 C 7086, 2003 WL 1811530, at *9 (N.D. Ill. Apr. 4, 2003); *In re Bridgestone/Firestone Inc. ATX ATX II Wilderness Tires Prods. Liab. Litig.*, No. IP 01-5252-C-B/S, 2002 WL 31689264, at *8 (S.D. Ind. Nov. 2, 2002); *Hengel, Inc. v. Hot 'N Now, Inc.*, 825 F. Supp. 1311, 1322 (N.D. Ill. 1993). The Court is extremely skeptical about the validity of any claim of common-law fraud under the circumstances alleged in Crichton's complaint. The gist of Crichton's allegations is of course that Golden Rule fraudulently failed to disclose certain underwriting practices, that is, "closing the blocks," that resulted in increased premiums for Crichton and other insureds. At common law, however, liability for a failure to disclose arises only where there is a duty to disclose, and Crichton's complaint alleges no facts suggesting that Golden Rule owed him such a duty. *See Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996) (outlining the limited instances in which a common-law duty to disclose may arise); *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 13-14 (Ill. App. Ct. 2001) (same). However, the Court need not decide this issue at this time. *See Washington Petroleum & Supply Co. v. Girard Bank*, 629 F. Supp. 1224, 1230 (M.D. Pa. 1983) (discussing circumstances under which a court may dismiss a complaint for failure to state a claim for relief on grounds not argued by the parties). The Court will dismiss Count II of Crichton's complaint, and grant him leave to amend his allegations of common-law fraud to plead with the requisite particularity, if he wishes to do so.

      **3.    Count III (RICO)**

Count III of Crichton's complaint asserts a claim under 18 U.S.C. § 1962, which provides, in pertinent part, "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or

participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "To state a claim under § 1962(c), a RICO plaintiff must show the '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir. 1995) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). *See also LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 393 (7th Cir. 1995); *McDonald v. Schencker*, 18 F.3d 491, 494 (7th Cir. 1994). An "enterprise" for RICO purposes means "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A "pattern of racketeering activity" means "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). "Racketeering activity" means certain acts that are chargeable and punishable as felonies under state law or that are indictable under specific federal criminal statutes, as set out in an exclusive list in RICO's definitional provisions, *see* 18 U.S.C. § 1961(1); *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 793 F. Supp. 1114, 1129 (E.D.N.Y. 1992), including mail fraud, *see* 18 U.S.C. § 1341, and wire fraud. *See* 18 U.S.C. § 1343.

Where a RICO plaintiff alleges a pattern of racketeering activity based on mail fraud and wire fraud, such racketeering activity must be pleaded with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. *See Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992); *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago*, 927 F.2d 988, 992 (7th Cir. 1991). In this case Crichton

alleges that FACT constitutes a RICO enterprise and that Golden Rule has committed racketeering activity in the form of predicate acts of mail fraud and wire fraud. Golden Rule has moved for dismissal of Crichton's claim under 18 U.S.C. § 1962(c) on the grounds that Crichton has failed to plead predicate acts of mail fraud and wire fraud constituting a pattern of racketeering activity with particularity as required by Rule 9(b), and that Crichton has failed to plead facts showing that Golden Rule conducted the alleged RICO enterprise.

          a.          **Pattern of Racketeering Activity**

As discussed, because Crichton's RICO claim is premised upon predicate acts of mail and wire fraud, the particularity requirements of Rule 9(b) apply to his complaint. "[A] plaintiff alleging predicate acts of mail and wire fraud must do so with particularity . . . . In order to satisfy this standard, a RICO plaintiff must allege 'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 729 (7th Cir. 1998) (quoting *Vicom, Inc.*, 20 F.3d at 777). "Moreover, because a RICO plaintiff must allege two predicate acts of fraud, she must satisfy the requirements of Rule 9(b) twice." *Id*. (emphasis omitted). "In the RICO context, courts adhere closely to the Rule 9(b) standard, requiring a plaintiff who relies upon acts of mail and wire fraud to 'do more than outline a scheme and make loose references to mailings and telephone calls; rather, the plaintiff must be careful to allege such particulars as who initiated the communication, when the communication took place, the contents of the communication, and how that communication furthered the scheme to defraud.'" *CIB Bank v. Esmail*, No. 04 C 4870, 2004 WL 3119027, at *3 (N.D. Ill. Dec. 28, 2004) (quoting *R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499, 1516 (N.D. Ill. 1990)).

In this case, as the Court already has discussed in connection with Crichton's claim for common-law fraud, Crichton's complaint is totally lacking as to crucial information like the date, method of delivery, sender and recipient, and contents of each of the alleged acts of mail fraud and wire fraud. "The purpose of Rule 9(b) is threefold: '(1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party." *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 843 (S.D. Ind. 2005) (quoting *Vicom, Inc.*, 20 F.3d at 777). "Because of those goals, 'loose references to mailings and telephone calls . . . in furtherance of a purported scheme to defraud will not do.'" *Id.* (quoting *Jepson, Inc.*, 34 F.3d at 1328). Instead, "the plaintiff must, within reason, describe the time, place, and content of the mail and wire communications, and it must identify the parties to these communications." *Id.* The Court concludes that Crichton's allegations of mail fraud and wire fraud are insufficient under Rule 9(b), and therefore Count III of Crichton's complaint will be dismissed without prejudice and with leave to re-plead the alleged predicate acts of racketeering. *See North Shore Med. Ctr., Ltd. v. Evanston Hosp. Corp.*, No. 92 C 6533, 1996 WL 435192, at **5-6 (N.D. Ill. July 31, 1996); *Aetna Life Ins. Co. v. Youtzy*, No. 88 C 10562, 1990 WL 6829, at **2-3 (N.D. Ill. Jan. 11, 1990); *Dileo v. Baumhart*, No. 84 C 7305, 1988 WL 50211, at **1-2 (N.D. Ill. May 4, 1988).

### b. Conduct of an Enterprise

As an alternative basis for dismissal of Count III of Crichton's complaint, Golden Rule contends that Crichton has failed to plead facts showing that Golden Rule operated or managed FACT, as required for a civil RICO claim. The Court agrees. In *Reves v. Ernst & Young*, 507 U.S. 170 (1993), the Court held that, for a defendant to be liable under 18 U.S.C. § 1962(c), the

defendant "must have some part in directing [the] affairs [of the RICO enterprise]." *Id*. at 179. In order to have conducted or participated in the enterprise's affairs under RICO, the person charged must have "participated in the operation or management of the enterprise itself." *United States v. Swan*, 250 F.3d 495, 498 (7th Cir. 2001). Put another way, "mere participation in the activities of the enterprise is insufficient; the defendant must participate in the operation or management of the enterprise." *Goren*, 156 F.3d at 727. *See also Slaney v. International Amateur Athletic Fed'n*, 244 F.3d 580, 598 (7th Cir. 2001). An enterprise may be "operated" by upper management, lower-rung participants who are under the direction of upper management, or others associated with the enterprise who exert control over it, for example, by bribery. *See Reves*, 507 U.S. at 184.

In this instance Crichton points to the following facts as showing the requisite operation or management of FACT by Golden Rule: the insurer requires its customers to become dues-paying FACT members in order to purchase health insurance under a policy issued to FACT by Golden Rule and collects premiums, in the form of "dues" paid by FACT members insured under the policy for FACT, *see* Doc. 7 ¶ 4; Golden Rule and FACT have an agreement to promote and market Golden Rule's health insurance products, and Golden Rule provides FACT with materials to use in marketing Golden Rule insurance to FACT members, *see id*. ¶¶ 25-26, ¶ 79; and FACT is furnished by Golden Rule with form letters and scripts for telephone calls with FACT members that allegedly conceal the fact that increases in premiums for Golden Rule health insurance are caused by the insurer's practice of closing blocks of insurance, blaming the increases instead on rising health care costs. *See id*. ¶ 41, ¶ 42, ¶ 80. In the Court's view, these allegations are insufficient to show operation or management of FACT by Golden Rule.

The facts alleged demonstrate only an agreement between Golden Rule and FACT to market

group insurance. An arms-length business relationship between distinct entities is not sufficient to show operation or management of an enterprise. In *Goren* the court held that allegations that defendants provided various kinds of promotional services for an alleged RICO enterprise did not establish the requisite control. *See* 156 F.3d at 727-28. The court held that the "averments clearly allege the existence of a business relationship between these defendants and the enterprise, but do not indicate that these defendants 'took some part in directing [the enterprise's] affairs.'" *Id*. at 728 (quoting *Reves*, 507 U.S. at 179). "Indeed, simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself." *Id*. *See also Jubelirer v. MasterCard Int'l, Inc.*, 68 F. Supp. 2d 1049, 1053 (W.D. Wis. 1999) (in a RICO action brought by a gambler who lost money at an on-line casino against a credit card company and a bank, holding that the plaintiff failed to show the requisite control of the alleged enterprise: "Plaintiff has alleged facts which make it apparent that the only relationship between the on-line casino and the defendants is a routine contractual relationship for the provision of consumer financing. That relationship does not constitute a RICO enterprise and the performance of such services does not constitute the operation or management of an enterprise."); *Early v. K-Tel Int'l, Inc.*, No. 97 C 2318, 1999 WL 181994, at *7 (N.D. Ill. Mar. 24, 1999) ("The allegation of 'business relationships' certainly does not permit an inference that the defendant retail stores participated in the operation or management of K-Tel and Dominion. At most it and other allegations in the complaint suggest that K-Tel/Dominion and the retail defendants collaborated in the scheme to defraud."); *El-Issa v. Compaq Computer Corp.*, No. 97 C 5839, 1997 WL 790730, at *5 (N.D. Ill. Dec. 19, 1997) (holding that allegations of "a typical business

relationship between a manufacturer and its retailers" are insufficient to establish the conduct element of a RICO claim); *Williams v. Ford Motor Co.*, 980 F. Supp. 938, 942-43 (N.D. Ill. 1997) (an automobile dealership did not participate in the operation or management of an automobile manufacturer that was claimed to be a RICO enterprise in a case arising from an alleged scheme to defraud purchasers of an extended warranty purchase plan; although the dealership processed plan applications, charged an inspection fee, and conducted repair work, it was an outsider that did not exert control over the manufacturer's affairs); *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 880 F. Supp. 1202, 1209 (N.D. Ill. 1995) (allegations of "a simple supplier-purchaser relationship" between a nursing home and a pharmacy were insufficient to allege that the nursing home participated in the operation or management of the pharmacy, as the alleged RICO "enterprise," which supplied pharmaceuticals to the nursing home for which the nursing home then allegedly overcharged its residents). *Cf. Department of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 924 F. Supp. 449, 465-69 (S.D.N.Y. 1996) (rejecting a plaintiff's argument that knowingly concealing the fraudulent activities of an alleged RICO enterprise was sufficient to establish conduct of the enterprise's affairs); *De Wit v. Firstar Corp.*, 879 F. Supp. 947, 965-66 (N.D. Iowa 1995) (holding that is not sufficient to control even fraudulent activity that is ancillary to the fraud carried out by the RICO enterprise and thus, "even provision of services essential to the operation of the RICO enterprise itself is not the same as participating in the conduct of the affairs of the enterprise."); *Comwest, Inc. v. American Operator Servs., Inc.*, 765 F. Supp. 1467, 1475 (C.D. Cal. 1991) (finding a lack of conduct for RICO purposes where "the parties' agreements do not suggest that the parties contemplated any relationship beyond an arms-length business transaction between two independent corporate entities.").

The Court concludes that the allegations of Crichton's complaint do not show that Golden Rule operated or managed FACT. This furnishes an additional basis for the dismissal of Count III of Crichton's complaint. The allegations of Crichton's complaint suggest strongly that this case is essentially an action for consumer fraud disguised as a RICO action. *See Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999); *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997); *U.S. Textiles, Inc. v. Anheuser-Busch Cos.*, 911 F.2d 1261, 1268 (7th Cir. 1990). *Cf. Royce Int'l Broad. Corp. v. Field*, No. C 99-4169 SI, 2000 WL 236434, at *4 (N.D. Cal. Feb. 23, 2000); *Van Schaick v. Church of Scientology of Cal., Inc.*, 535 F. Supp. 1125, 1136 (D. Mass. 1982). Nevertheless, the Court will grant Crichton leave to re-plead Count III to attempt to allege conduct of an enterprise as required by 18 U.S.C. § 1962(c).

## CONCLUSION

Golden Rule's motion to dismiss (Doc. 20) is **GRANTED**. Count I of Crichton's operative complaint (Doc. 7) is **DISMISSED with prejudice**. Count II and Count III of the complaint are **DISMISSED without prejudice**. Crichton is given leave to file an amended complaint in conformity with this Order not later than thirty (30) days from the date of entry of this Order.

**IT IS SO ORDERED.**

DATED: 08/11/06

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge